stroyed, defendant, finding it afloat and fastened by a chain, extending from its bow to a tree on Davis' land, went in another boat, and, without going upon Davis' land, unfastened the chain, took the boat out of the water, and broke it up. It was held that the destruction of the boat, the instrument with which a persistent, repeated, and defiant trespass had been perpetrated, was justifiable. It seems, then, that acts of trespass long continued may become a nuisance, which equity will enjoin.

[3] Even if they do not, nevertheless, the action here may be maintained on the theory of a continuous or constantly recurring trespass, since that is the foundation of the alleged nuisance set forth in the complaint, and since the evidence is sufficient to sustain a finding to that effect. Where acts of trespass are continuous or constantly recurring, whereby, if permitted to continue, irreparable injury may result, an injunction will lie to restrain same, both on the ground that the remedy at law is inadequate and to prevent a repetition or multiplicity of such suits. 22 Cyc. 836; Henderson v. N. Y. C. R. R. Co., 78 N. Y. 423, 430, 434.

Findings accordingly.

---

(163 App. Div. 143)

HUTCHINS v. RUTLAND R. CO.    (No. 165-75.)

(Supreme Court, Appellate Division, Third Department.    July 1, 1914.)

1. NEW TRIAL (§ 68*)—GROUNDS—VERDICT CONTRARY TO EVIDENCE.

In an action for the death of a servant, crushed while riding on a railroad car on which was mounted a revolving derrick, by the engineer swinging the boom around to see ahead, a special verdict finding the engineer negligent was properly set aside, where the evidence showed clearly that he had no reason to expect that any one was in a position of danger; the engineer testifying, when called by plaintiff, that decedent was some distance away when he started the car, and he did not know decedent was riding on it when he swung the boom around, the distance the car was going being only about 300 feet, and its rate of speed no faster than decedent could walk, and there being no evidence of any general custom of carrying workers in that manner.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 135–140; Dec. Dig. § 68.*]

2. MASTER AND SERVANT (§ 239*)—INJURIES TO SERVANT—ACTIONS—QUESTIONS FOR JURY.

A servant was guilty of negligence as a matter of law in climbing on the housing block at the end of the axle shaft of a car on which was mounted a revolving derrick, to ride a distance of about 300 feet, where the car could travel no faster than he could walk, preventing recovery for his death from the swinging around of the boom.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 749, 750; Dec. Dig. § 239.*]

Howard, J., dissenting.

Appeal from Trial Term, Franklin County.

Action by Sarah J. Hutchins, as administratrix of the goods, chattels, and credits of William H. Hutchins, deceased, against the Rutland Railroad Company. From a judgment for defendant, and orders granting a nonsuit and dismissal, and setting aside the special find-

ings of the jury and assessment of damages, plaintiff appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Moore & Cooney, of Malone (A. B. Cooney, of Malone, of counsel), for appellant.

Cantwell & Cantwell, of Malone (John M. Cantwell, of Malone, and E. W. Lawrence, of Rutland, Vt., of counsel), for respondent.

WOODWARD, J. [1] Plaintiff's intestate was killed while employed by the defendant in its yards at Malone on the 3d day of October, 1911. The defendant owned and operated a work car, equipped with a derrick or crane used with a shovel or scoop in removing coal from cars and doing other work of that character. The engine controlling the operation of the crane was contained in a house, mounted upon a revolving disk, and the boom of the crane ran out from the revolving disk at an angle and reached a distance of about 35 feet from the house where the operator was located. Besides the derrick equipment, the car was geared to the engine, so that it could be moved with its own power from place to place in the yard; but its movements were very slow, proceeding only at the rate of 2 or 3 miles an hour. On the day of the accident, which resulted in the death of the plaintiff's intestate, this work car had been cleaning up some cinders, and after this work was done the conductor ordered the car placed upon another switch, where a like piece of work was to be done. The engineer started the car down the track toward the switch, and plaintiff's intestate and a man by the name of Jones, who were standing at the time to the westward of the car, and some distance away, ran and climbed upon the front end of the car, standing upon the housing block which covers the ends of the shafts of the wheels, and leaned over the platform of the car, intending to ride to the point where the switches were to be turned, some 300 feet away. Jones left the car, at a point immediate the last switch, to place a third switch, and soon after he had left the car the engineer, who testifies that he did not know that plaintiff's intestate was upon the car, turned the boom of the derrick around toward the forward end of the car, and plaintiff's intestate was caught between the swinging boom and the side of the car and instantly killed.

The engineer, who was called in behalf of the plaintiff, testified that when he started to move the car the plaintiff's intestate was to the west and some distance away, and that he did not know that the plaintiff's intestate was upon the car, and there does not appear to have been any reason why the decedent should have been upon the car, for it was not moving any faster than he could walk, and was going east only about 300 feet. There was no evidence from which it could be fairly inferred that there was any general custom of using this car for carrying the workers in the manner in which the plaintiff's intestate was riding at the time. There is no evidence that the car as equipped was not a proper car for the work. There is no evidence that it was out of order, or that the engineer had any reason to

anticipate that there was any one in a position to be injured by the changing of the location of the boom, and as the only window in the engine house looked out in the direction of the boom, and the car was moving to the eastward, it was the natural and prudent thing, no doubt, to swing the apparatus around in such a way that the engineer would be looking in the direction he was running the car. Under such circumstances there was clearly no evidence which could justify the jury in finding negligence on the part of the engineer as the alter ego of the defendant, and the special verdict of the jury finding negligence on the part of the engineer was properly set aside.

[2] It seems equally clear that the plaintiff's intestate was guilty of negligence as a matter of law in climbing onto the car and riding in the manner testified to by Jones. There was no occasion for it; there was a perfectly safe way to proceed to the switch, and the movement of the car being at the rate of only 2 or 3 miles an hour, no consideration of economy in time could justify taking the chances. The car was not designed for carrying people; it was equipped for special work, the machinery being operated by a single man, and if plaintiff's intestate climbed onto the side of this car, giving no notice of his presence, the defendant ought not to be charged with damages, for it owed the decedent no duty under such circumstances. It was not negligent for the defendant's engineer to swing the derrick, unless he had reason to expect that some one would be in a position to be injured, and the evidence in this case does not warrant any such conclusion.

The judgment and orders appealed from should be affirmed, with costs. All concur, except HOWARD, J., who dissents.